## C. & P. TELEPHONE CO.

*vs.*

## STATE ROADS COMMISSION.

*Telegraph and telephone companies: right to use State roads; charges for—; Section 359 of Article 23 of Code; rights of State Roads Commission.*

Chapter 471 of the Acts of 1868, Section 359 of Article 23 of the Code, did not confer upon telegraph or telephone companies the right to make special use of the State's property without compensation or give them the exclusive right of the highways free of charge.                                    p. 5

The Legislature has not delegated to the State Roads Commission the authority to impose charges for new uses or to create new liability upon telegraph or telephone companies for the use of State roads.                                    p. 6

But that Commission, as the agency of the State and when, as in this case, it is the assignee of a turnpike road, has the right and power to enforce a previous or existing liability founded upon a contract, and which it acquired in the purchase of the turnpike road.                                    p. 6

*Decided February 11th, 1919.*

Appeal from the Superior Court of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The prayers granted by the lower Court and which are order to be printed with a report of the case are as follows:

*Plaintiff's First Prayer.*—The plaintiff prays the Court to instruct the Court, sitting as a jury, that if it shall find from the evidence herein, that on July 26, 1905, the defendant agreed with the president, managers and company of the Baltimore and Yorktown Turnpike Road to pay said turnpike company 25 cents a year for each and every pole maintained by defendant on the York Turnpike Road, and that the defendant constructed a pole line upon the Yorktown Turnpike road in accordance with a certain application made on May 19, 1910, to the plaintiff, after the passage of an order by the plaintiff, dated May 21, 1910, which order provided that all rights reserved to the Turnpike Company by said agreement with defendant should be possessed in every respect by the plaintiff in the event of its thereafter securing title to the turnpike road, and that the acting under the terms of said order by the defendant should be its assent to all the provisions of such order, and if the Court should further find that the plaintiff did, on July 22, 1910, secure title to said turnpike road, and that from July 22, 1910, to January 1, 1915, there have been continuously upon said road 1,019 poles maintained by the defendant, and that the defendant has paid nothing to the plaintiff therefor, that then the verdict must be for the plaintiff at the rate of rental set forth in said agreement.    (*Granted.*)

*Plaintiff's Second Prayer.*—The plaintiff prays the Court to instruct the Court, sitting as a jury, that if it shall find from the evidence herein that on July 26, 1905, the defendant agreed with the president, managers and company of the Baltimore and Yorktown Turnpike Road to pay said Turnpike Company 25 cents a year for each and every pole maintained by defendant on the York Turnpike road, and if the Court should further find that the plaintiff did, on July 22, 1910, acquire all the right, title, interest and estate whatsoever in law or equity of the president, managers and com-

pany of said road in said turnpike road, subject to certain reservations contained in the deed and agreement of July 22, 1910, and that from July 22, 1910, to January 1, 1915, there had been continuously upon said road 1,019 poles maintained by the defendant and that the defendant had paid nothing to the plaintiff therefor, that then the verdict must be for the plaintiff at the rate of rental set forth in said agreement. (*Granted.*)

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Shirley Carter* (with a brief by *Bernard Carter & Sons*), for the appellant.

*Philip B. Perlman, Assistant Attorney General, Ogle Marbury, Acting Attorney General* (with whom was *Albert C. Ritchie, Attorney General,* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a suit by the State Roads Commission of Maryland to recover from the Chesapeake and Potomac Telephone Company, of Baltimore City, a corporation of the State of Maryland, the sum of $1,132.76, alleged to be due and owing the plaintiff by the defendant, for the use of its road bed for the telephone poles and wires of that company from the 22nd day of July, 1910, to the 1st day of January, 1915.

The case was heard, in the Court below, upon an agreed statement, as to the facts, which is set out in the record, and from a judgment, in favor of the plaintiff the defendant has appealed.

The cause of action and the basis of the plaintiff's claim are stated and appear, from the averments of the declaration and the agreed statement of facts, and briefly stated, are these: On the 22nd day of July, 1910, the president, managers and company of the Baltimore and Yorktown Turnpike Road granted and conveyed to the plaintiff, the State Roads

Commission of Maryland, all of its right and title, in and over any and all of the roadbed of its turnpike, beginning at the limits of the City of Baltimore and extending in a northerly direction to a line dividing the States of Maryland and Pennsylvania, a distance of about 28.2 miles more or less. At that time and prior thereto, the defendant had been maintaining and operating a telephone line, consisting of poles and wires on the turnpike road, under an agreement with the Turnpike Company dated the 26th day of July, in the year 1905, by which the defendant agreed to pay twenty-five cents a year for each and every pole maintained by it, and these payments had been regularly made by the defendant, to the Turnpike Company, as rentals for the use of the roadbed, as provided for in the agreement. While there is no limitation as to time provided for in the agreement, the defendant has continued to use the road, in the same manner since its acquisition by the plaintiff, as heretofore and is still so continuing to use it, but although demands have been made for payment accruing after the 22nd day of July, 1910, the defendant has refused to make any further payments, and this suit is brought to recover what it alleges to be a proper and reasonable charge, for the use of the road for its poles from the 22nd day of July, 1910, to the first day of January, 1915.

There are two principal grounds of defense to the action, made on the defendant's demurrer to the declaration and presented by the defendant's prayers, which were refused, at the trial of the case.

The first contention is, that the State of Maryland, prior to the acquisition by the plaintiff of the turnpike road had by virtue of the provisions of section 359 of Article 23, of the Public General Laws of the State, applicable to telephone and telegraph companies, granted to the defendant the right to use all highways belonging to the State for its poles and wires and other fixtures and upon the acquisition by the State of the turnpike road the defendant's right to use the road, was

absolute and no longer conditional upon the agreement, with the former owner of the road.

The point here made and advanced has been presented, in various forms and phases to this Court, in a number of recent cases, and it seems to be well settled, by those decisions, that the Act of 1868, Chapter 471, sec. 129, now section 359 of Article 23, of the Code, relied upon by the defendant, did not confer upon or give the right to telephone or telegraph companies to make special use of the State's property, without compensation or to give to these companies the exclusive use of the highways of the State, free of charge.

In *Postal Tel. Cable Co.* v. *Baltimore,* 79 Md. 502, this Court held, that the City of Baltimore had the right to charge a telegraph company for the use of its streets by telegraph poles erected thereon, and that the Act of Congress of July, 1866, entitling it to use the post roads of the United States for the operation of its lines, did not entitle these companies to use the roads of the States, free of charge. This case was affirmed on appeal to the Supreme Court of the United States, in 156 U. S. 210, 399, upon the authority of *St. Louis* v. *Western U. Teleg. Co.,* 148 U. S. 92, and 149 U. S. 470.

In *Postal Tel. Co.* v. *State Roads Commission,* 127 Md. 254, this Court held that section 359 of Article 23 of the Code was not an obstacle to recovery in that case, and further said, "that the Act of 1868, Chapter 471, was in force when the case in 79 Md. 502, was decided and regardless of whether it was intended to or did apply to foreign corporations, it simply provided that telephone companies could construct their lines as therein stated "without their being deemed a public nuisance or subject to be abated by any private party." That certainly cannot be construed to give the right to such a corporation to make special use of the State's property without compensation."

In the recent case of *Chesapeake and Potomac Tel. Co.* v. *State Roads Commission,* 132 Md. 194, it is said, "the gen-

eral privilege accorded telegraph and telephone companies, formed under our incorporation law, to construct their lines on the public highways without thereby subjecting themselves to liability for the creation of a nuisance, does not place the State under any contractual or other obligation to permit any individual company, availing itself of the privilege and protection afforded by the statute, to occupy and use the highways of the State without compensation."

It is clear, then, under the decisions of this Court, and the authorities cited, that the defendant corporation has no right to the exclusive use of the highways of the State, free from compensation, and it is competent for the State to recover for its benefit, compensation for the use of the portion of the highway thus appropriated.

The second contention is, that the Legislature of the State, has not authorized and empowered the State Roads Commission to charge the telephone companies of the State for the use of the State roads and as the State itself has imposed no charge, the plaintiff cannot recover under the declaration in this case.

It may be conceded, that the Legislature has not delegated to the plaintiff authority to impose charges upon new users, or to create a new liability upon telegraph and telephone companies for the use of the State roads, but it can hardly be disputed that the State Roads Commission as an agency of the State, and as in this case, the assignee of the Turnpike Road, would not have the right or power to enforce a previous or an existing liability founded upon contract and which was acquired in the purchase of the turnpike road by the plaintiff.

Section 32C of Chapter 141 of the Acts of 1908, now codified as section 35 of Article 91, of the Code, provides the method and confers the power upon the State Roads Commission to acquire by purchase or condemnation any and all existing turnpikes or any sections thereof or any rights or interests therein, subject to any outstanding occupation, use

or franchise of any electric railway company or other public service corporation and thereafter all highways, however acquired hereinunder, shall be State highways and shall be constructed, improved and maintained by the Commission for the State and at its expense, except as otherwise provided by the Act itself.

By the deed and agreement of purchase dated the 22nd day of July, in the year 1910, by and between the president, managers and company of the Baltimore and Yorktown Turnpike Company, grantors, and the State Roads Commission for and on behalf of the State, grantee, "all the right, title, interest and estate whatsoever in law or in equity, in, to, or over any and all of the roadbed of its turnpike," as described therein, were granted, conveyed and assigned to the plaintiff, subject to certain outstanding rights, easements, franchises, occupation or use of the Maryland Electric Railway Company and the United Railways and Electric Company of Baltimore, as provided by the reservations in the deed.

Section 34 of Article 91 of the Code, under which the purchase in this case was made and the turnpike property acquired, provides, that the Commission shall have power to acquire for the State of Maryland, by agreement, grant, purchase or condemnation any roads or private property whatsoever whether belonging to private individuals or to turnpike companies or other corporations, including any avenues or roads, rights or interests, franchises, privileges or easements, that may be, in its judgment, desirable or necessary to complete the system of roads, or to carry out the purposes of this Act; contract with any person or persons, company or corporation, either private or quasi public, in furtherance of the duties and objects of the Act; make and enter into any and all contracts, agreements or stipulations germane to the scope of its duties and powers under the Act.

We find nothing in the recent case of *C. & P. Tel. Co.* v. *State Roads Commission,* 132 Md. 194, where the parties were the same as those here to sustain the defendant's con-

tention made in this case. The facts of that case were entirely different from those presented on this record, in that, the Court was dealing with a new use to be made of the State road by a corporation where there was no question as we have presented in this case of a pre-existing contract for rental or use of the road by the defendant with a previous and prior owner, nor of an assignment of those rights, at the time of the purchase of the property nor the continuing use and occupation of the road by the defendant after it passed under the control of the plaintiff.

The case of *C. & P. Tel. Co.* v. *State Roads Commission, supra,* is not in any way in conflict with what was said, in the previous cases of *Postal Tel. Co.* v. *State Roads Commission* in 123 Md. 73 and in the same case in 127 Md. 243, and is not, therefore, controlling on this appeal.

In 123 Md. 73, *supra,* it is said, even if it be assumed, that there is no power given the Commission to impose rental charges upon new users of the public highway there can be no reason for not permitting the charge to be made as the assignee of a private owner. It was further said in that case: "There is no attempt under this *narr.* to enforce a new liability, but the enforcement of an old existing liability founded upon contract and which was acquired by the Commission as a part of the consideration of the purchase. Although it can be argued that the State never intended to authorize the charging for future privileges upon the public highways, can it be seriously contended that the Legislature in contemplating large expenditures of money in the purchasing of private bridges and turnpikes, intended that those who were enjoying an exclusive occupancy of a portion of them for a consideration were to be relieved of that charge at the expense of the State? The wording of the Act shows that the Legislature knew that persons or corporations had certain rights, franchises and easements in this bridge to which the rights of the traveling public might be subject, for it authorized the Commission to acquire them. Can it be conceived that it intended to permit them to be still exercised without being subject to

whatever previous liability there might have been? It can not be doubted but that in fixing a price for its property the Bridge Company took into consideration the value of this lease it had with the appellee and increased its price accordingly."

Under the facts of that case, and they are somewhat similar to those here, the Court held there was a liability on the part of the Postal Telegraph Company, and the judgment in sustaining the defendant's demurrer was reversed and the case remanded for a new trial.

This case was before us a second time in 127 Md. 244, *supra,* and we there said it is not easy to understand why a corporation such as the appellant should have been willing to pay and did pay for the use of a bridge such as this, a definite and fixed compensation for a number of years as long as the bridge belonged to a private corporation, but as soon as the State became the owner of the bridge by an expenditure of a large sum of money should refuse to pay anything therefor although its use of the bridge has not in any respect changed. If the Bridge Company were still the owner there could be no question about its right to recover and in our judgment there can be no doubt about the right of the State to recover something in some kind of proceeding.

The judgment in that case in favor of the State Roads Commission was affirmed and the conclusion reached by us on the record in that case is supported by a number of decisions from other States and the Supreme Court of the United States and as they are applicable to the facts of this case will be referred to without prolonging this opinion by a further citation therefrom. *St. Louis* v. *Western Union Tel. Co.,* 148 U. S. 92; *Postal Tel. Co.* v. *Baltimore,* 156 U. S. 210; *West. Union Tel. Co.* v. *Richmond,* 224 U. S. 160; *Beaver Co.* v. *C. D. & P. Tel. Co.,* 219 Pa. 340; *Beaver Co.* v. *B. V. Traction Co.,* 229 Pa. 565; *Point Bridge Co.* v. *P. W. & W. E. Ry. Co.,* 230 Pa. 289; *Point Bridge Co.* v. *P. Ry. Co.,* 240 Pa. 105; *Monongahela Bridge Co.* v. *P. Ry. Co.,* 240 Pa. 121.

But apart from the reasons we have given, it appears from the agreed statement of facts that on the 19th of May, 1910, the defendant applied to the plaintiff by petition under the terms of the agreement between the turnpike road and the defendant, dated the 26th of July, 1905, for a permit to construct without delay a line of telephone poles and fixtures on the turnpike road, and that this permit was granted. The acceptance of the permit and the subsequent erection of the poles thereon was based upon the following provision, incorporated in the permit. In the event of the State Roads Commission hereafter securing title to the Turnpike road, then all rights reserved to the Turnpike Company by its agreement with the Telephone Company of July 26th, 1905, shall be possessed in every respect by the said State Roads Commission; and the acceptance of this order by the Telephone Company and its acting thereunder shall be held as its assent to all of the provisions of this order.

The State Roads Commission subsequently acquired the Turnpike road and the acceptance of the permit and the acting thereunder in pursuance of its terms by the defendant was a clear assent to continue in force the rights and privileges of the Turnpike road under the agreement of July 26th, 1905, and thereby establishing the right to recover in this case as assignee of the Turnpike Road Company. *Postal Tel. Co.* v. *State Roads Commission,* 127 Md. 248.

It results, therefore, from what we have said the Court below committed no error in overruling the defendant's demurrer to the plaintiff's declaration. As this conclusion disposes of the propositions of law presented by the prayers we do not deem it necessary to extend this opinion by a discussion of them. The State Reporter will incorporate the granted prayers in the report of the case.

For the reasons stated the judgment in favor of the plaintiff must be affirmed.

*Judgment affirmed, with costs.*